# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACEY BERBEREIA, individually and on behalf of the ESTATE OF ALBERT HANSON, JR., DANIEL HANSON, and KIMBERLY NIZ,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF KINGS; DEPUTY TAYLOR LOPES; DETECTIVE MARIUS BARSTECEANU; DEPUTY THOMAS OLSON; UNKNOWN LAW ENFORCEMENT OFFICERS,<br><br>Defendants. | 1:16-CV-00363-LJO-SKO<br><br>ORDER DENYING MOTION FOR RECONSIDERATION (ECF No. 43). |

Before the Court for decision is a motion for reconsideration filed by Defendants County of Kings, Deputy Taylor Lopes, Sergeant Marius "Chris" Barsteceanu, and Deputy Thomas Olson, ECF No. 43, concerning the April 3, 2018 Memorandum Decision and Order granting in part and denying in part Defendants' motion for summary judgment. ECF No. 38. Specifically, Defendants ask the Court to reconsider its determination that disputes of fact exist to preclude summary judgment on Plaintiffs' fourth and fourteenth amendment claims. Having reviewed the motion and the record evidence cited therein, the Court DENIES the motion.

In the interest of expedience, the Court incorporates by reference the facts described and reasoning provided in its April 3, 2018 Order. *Id*. On reconsideration, Defendants first argue that the Court overlooked certain aspects of the testimony of video forensic expert Michael Schott. In particular, Mr. Schott testified that at 17 hours, 19 minutes, and 50.240 seconds into the video of the

1

incident recorded by the California Highway Patrol ("CHP") airplane camera, the Decedent began to elevate the barrel of his rifle and move it in a clockwise direction toward the rear of the Bronco, where responding deputies were located. Plaintiff's Ex. 15 (ECF No. 34-7), Depo. of Michael Schott at 28:11-13. Mr. Schott testified that the "last traces" of the rifle moved clockwise out of the view of the CHP camera at 17:19:51.720. In sum, Mr. Schott testified that the images "show the rifle rising toward the seat – the seat toward the rear of the vehicle as [decedent is] turning to his right. Based on that alone, I would classify it as an imminent threat because it gives the appearance consistent with him turning toward the officers with the rifle." *Id.* at 14:17-23. After this motion, the rifle goes out of camera view and stays out of view for about 2.48 seconds. *Id.* at 11:22-12:7. During this time, Officer Manning could not see what was happening through his view of the inside of the front seat of the vehicle from above.

Defendants argue that during this 2.48-second span, there is nothing to refute their testimony that the rifle was pointed toward the rear of the Bronco (at the officers). ECF No. 43 at 4. However, Officer Manning's testimony indicates that Plaintiff had turned back to face the front windshield by the time the first shot penetrated the front windshield of the Bronco. Plaintiff's Ex. 10 (ECF No. 34-7), Depo. of Dusty Manning at 22:8-25 ("Yeah, that rifle came all the way basically pointing out towards the windshield, and then that shot occurred."). This, viewed in a light most favorable to Plaintiffs coupled with the fact that there is no evidence that Decedent ever discharged his weapon, could support a factual finding that Decedent was facing the front of the Bronco (or at least substantially so) at the time the first shot was fired. Defendants argue that there is no evidence to indicate this was indeed the first shot fired – suggesting that Deputies may have reacted earlier to their purported impression that Decedent was pointing the rifle toward the back of the vehicle. ECF No. 43-1. But, the video evidence circumstantially supports the factual proposition that the first bullet seen by Officer Manning exiting the windshield of the vehicle was the first bullet fired, by virtue of the absence of any other visual evidence of the timing of weapons firings or bullet strikes. Defendants have provided no evidence to the contrary at this stage of the case, and certainly no undisputed evidence to the contrary.

Moreover, Decedent's own body calls into question Defendants' descriptions of what took place during the 2.48 second period when Officer Manning could not see the rifle from the air. The autopsy

report shows numerous wounds to the back side of Decedent's body (his back, the back of his neck, and the back of his head). *See* Plaintiff's Exhibit 2 (ECF No. 34-7) (Autopsy Report) (Bates # BERBERIA030). Defendants make much of the fact that the autopsy report indicates "[t]he most prominent wound consists of a blowout wound of the right face extending from the right forehead to just below the right nose." Doc. 34-7 at 5. Defendants suggest that this, along with the scene photographs, indicates Plaintiff was turned to the right when he was shot. *Id*. While neither party presents expert testimony to help interpret the raw autopsy report (Plaintiff's Ex. 2), related narrative contained within the Incident report (Plaintiff's Exhibit 1 (ECF No. 34-6), pp. 426-427), and the scene photographs (Plaintiff's Exhibit 21 (ECF No. 34-8)), Defendants' interpretation is certainly not the only facially reasonable one. Viewing the evidence in the light most favorable to Plaintiff, it seems equally if not more likely that the "blowout" wound in Decedent's right forehead is an exit wound, which could support Plaintiffs' position that all bullet entry wounds were to the back of Decedent's body. This is the essence of a factual dispute that cannot be resolved on summary judgment.

Finally, Defendants argue that the Court committed clear error in connection with its ruling on Plaintiffs' Fourteenth Amendment claim. The law on this issue is clear. Government conduct may offend due process only when it "'shocks the conscience' and violates the 'decencies of civilized conduct.'" *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). A plaintiff may demonstrate that an officer's conduct shocks the conscience by showing that the officer acted with either (1) deliberate indifference, or (2) a purpose to harm the decedent for reasons unrelated to legitimate law enforcement objectives. *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). The appropriate standard of culpability in a given case turns on whether the officer had an opportunity for actual deliberation. *Id*. at at 1138.

> Where actual deliberation is practical, then an officer's "deliberate indifference" may suffice to shock the conscience. On the other hand, where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives.

*Gantt v. City of Los Angeles*, 717 F.3d 702, 707 (9th Cir. 2013) (internal quotation omitted). "By its nature, the determination of which situation [an officer] actually [finds] himself in is a question of fact

3

for the jury, so long as there is sufficient evidence to support both standards." *Duenez v. City of Manteca*, No. 2:11-cv-01820-LKK-AC, 2013 WL 6816375, at *14 (E.D. Cal. Dec. 23, 2013).

Here, again viewing the evidence in the light most favorable to Plaintiffs (i.e., that Decedent never turned around and aimed the rifle at Defendants), a jury could find that Defendants never encountered the type of emergency situation that would necessitate a snap judgment. Accordingly, the Court is required on summary judgment to assume that the standard of culpability more favorable to Plaintiffs (deliberate indifference) applied for purposes of resolving the motion for summary judgment. "Deliberate indifference occurs when 'the official acted or failed to act despite his knowledge of a substantial risk of serious harm.'" *Solis v. Cty. of Los Angeles*, 514 F.3d 946, 957 (9th Cir. 2008) (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). If Plaintiffs' facts are believed, a finder of fact could conclude that the deliberate indifference standard is satisfied in this case.

Defendants' motion for reconsideration is DENIED.

IT IS SO ORDERED.

Dated: **April 17, 2018**         /s/ Lawrence J. O'Neill
                                  UNITED STATES CHIEF DISTRICT JUDGE